HUGH BLAKELY v. JOHN P. HAMMEREL and Others.[1]

Oct. 30, 1895.

Nos. 9532—(80).

**Chattel Mortgage—Fraud on Creditors.**

Evidence considered, and *held* sufficient to require the trial court to have submitted the question of fraud to the jury.

Appeal by defendants from an order of the district court for Stearns county, Searle, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $484.64, directed by the court. Reversed.

*Morphy, Ewing, Gilbert & Ewing*, for appellants.
*Geo. H. Reynolds*, for respondent.

BUCK, J.    On March 27, 1894, the defendants Tarbox, Schliek & Co. recovered a judgment against one I. G. Swanson and two other parties for the sum of $272.12, and on the 17th day of said month the defendant the B. T. Tobacco Company recovered a judgment against the same parties for the sum of $113.12.    On July 12,'

[1] Reported in 64 N. W. 821.

1894, executions were issued on each of said judgments under the seal of the court, and directed to the defendant Hammerel, as sheriff of the county where the judgments were recovered, commanding him to satisfy out of the property of the judgment debtors the respective sums in each judgment; and in obedience to said writ the sheriff levied upon the property described in the complaint as the property of said I. G. Swanson, and, after giving public notice, sold said property.

On September 29, 1893, Swanson executed a note and chattel mortgage to George H. Partridge, who is designated in the mortgage as trustee. The consideration named in the mortgage was $1,081.50, and the property mortgaged was described as "all that stock of dry goods, groceries, clothing, notions, and hardware now owned by said Iver G. Swanson," of the alleged value of $1,277. It appears that this mortgage was intended to secure several different claims against Swanson, aggregating about the consideration named in the mortgage, and including the indebtedness of Tarbox, Schliek & Co. and the B. T. Tobacco Company, which indebtedness existed at the time of the execution of the chattel mortgage, and upon which the foregoing judgments were subsequently obtained. The latter-named parties repudiated the mortgage, as it appears they had a right to do. The plaintiff, Hugh Blakely, is the father-in-law of Swanson. Partridge, as trustee, on May 31, 1894, assigned the mortgage and the amount due thereon to Blakely, who, as such assignee, brings this action against the several named defendants for taking and converting the mortgaged goods so levied upon and sold by said sheriff.

The mortgage contains this clause: "It is understood and agreed that said Swanson shall act as the agent of Partridge and has the right to sell and dispose of the goods in good faith and in the usual course of trade as security to said Partridge for the proceeds thereof, now in possession of the said Iver G. Swanson." Upon the trial, Swanson, who was a witness, testified as follows:

"Q. Who came to you when you gave this chattel mortgage?

"A. Mr. Tolman transacted the business.

"Q. He said he wanted to secure certain claims, did he?

"A. Yes, sir. He wanted security for the claims he had.

"Q. What conversation did you have with him at that time?

"A. Our conversation was that I should secure the creditors in that way, as we did,—on the mortgage,—and that I should act as the agent, and dispose of and sell the goods in the usual course of trade and turn in the proceeds to Mr. Partridge as the trustee.

"Q. That is, by the 'proceeds' you mean what?

"A.· Taking out the running expenses and the amount of goods I had to buy and keep up the stock and keep the business going; the proceeds after I done all that. That was the understanding we had between us.

"Q. To turn over the proceeds after you paid the running expenses and kept the stock up?

"A. Yes, sir; and to make payments as fast as I could.

"Q. It was understood that you were to have enough for your running expenses?

"A. Yes, sir; that must always be allowed.

"Q. And you were to have enough to keep your stock up,—necessary things you had to have?

"A. Yes, sir.

"Q. You were practically to go on the same as ever, carry on your business in the usual course of trade, keeping your stock up, and paying your expenses?

"A. That is what I have said before."

It appears that three of the claims, amounting to $451.64, were withdrawn from the mortgage trusteeship, leaving $629.86 secured by the mortgage, and of this amount there remained unpaid at the time of the assignment to plaintiff $466, showing that only $183.86 had been paid upon all of the claims from the time of the execution of the mortgage, September 29, 1893, to the time of the assignment to plaintiff, on May·31, 1894,—a period of over eight months; and none of that sum was paid to the judgment creditors herein named as defendants. There has been no accounting by Swanson of the proceeds of the sale of the mortgaged property, showing amounts received, or the amounts paid out, or to·whom paid. Even conceding that the mortgage is valid upon its face, yet from Swanson's uncontradicted evidence, together with all the other facts appearing in the record, it is very clear that the question of the fraudulent intent existing at the time of the execution of the mortgage on the part of the parties thereto was of such a

character that it should have been submitted to the jury as a question of fact, and not determined by the trial court as a matter of law.

The order denying the motion for a new trial is reversed.